**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0511n.06

No. 10-4259

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 17, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| LARRY LEWIS, | ) |
| | ) |
| **Plaintiff-Appellant,** | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE SOUTHERN |
| | ) DISTRICT OF OHIO |
| CENTRAL STATES, SOUTHEAST | ) |
| & SOUTHWEST AREAS PENSION | ) |
| FUND et al., | ) **O P I N I O N** |
| | ) |
| **Defendants-Appellees.** | ) |
| | ) |

Before: KEITH, BOGGS, and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Larry Lewis sued Duro

Bag Manufacturing Company ("Duro Bag"), his former employer, Central States, Southeast &

Southwest Areas Pension Fund ("Central States" or "the pension plan"), and the International

Brotherhood of Teamsters, alleging that Central States improperly rejected his claim for additional

contributory service credit from his time working at Duro Bag. The district court granted Central

States's motion for judgment on the administrative record and denied Lewis's motion to set aside

the administrative decision. Because Central States's denial of Lewis's claim was not arbitrary or

capricious, we AFFIRM.

## I. BACKGROUND

Central States is a multiemployer employee-benefit plan regulated by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and administered by a Board of Trustees composed of representatives of labor and management. As relevant for this case, the pension plan provides for a significant increase in pension benefits with twenty-five years of contributory service credit. A participant earns contributory service credit based on the length of his employment with an employer required to contribute to the pension plan on his behalf under a collective bargaining agreement ("CBA").

The CBA between Duro Bag and International Brotherhood of Teamsters, Local 100 ("Local 100") provides that Duro Bag must contribute to Central States "for each regular seniority employee covered by this agreement, excluding extra, casual, temporary and part-time employees." R.16-4 at 36 (CBA, Art. 9(a)). The CBA also requires that "[n]ewly hired drivers must work thirty (30) cumulative work days within any ninety (90) calendar day period before being considered a regular employee." *Id.* at 37 (CBA, Art. 10(a)). Employees begin to accrue seniority after completing this "probationary period," but "may be discharged without recourse" before doing so. *Id.*[1] The contract

---

[1]Part of the dispute in this case stems from the CBA's failure to define some of the terms it uses to describe different types of employees. Because the CBA does not contain a different definition of "casual employees," we understand that term to carry its common meaning of "short term, temporary, sporadic employees." *Brown-Graves Co. v. Central States, Se. & Sw. Areas Pension Fund*, 206 F.3d 680, 683-84 (6th Cir. 2000). A casual employee is thus distinct from a full-time employee. The CBA also makes clear that a "regular seniority employee" is distinct from a casual employee, but does not address the relationship between a regular seniority employee and a full-time employee.

also contains a union-shop provision, which directs "[a]ll employees . . . [to] become and remain members of the Union in good standing as a condition of employment on the thirty-first (31st) day following the date of employment." *Id.* at 34 (CBA, Art. 3).

As described in more detail below, the circumstances of Lewis's first year and a half of employment with Duro Bag are a matter of dispute. In brief, the parties disagree over whether Lewis became eligible as a regular employee for contributions to Central States on his behalf, and thus began earning contributory service credit, in July 1976 or in November 1977.

Duro Bag began making contributions to Central States on Lewis's behalf in November 1977. When Duro Bag went out of business in the Cincinnati area in 1986, Lewis wrote to Central States requesting information on the amount of service credit he had earned. In his letter, Lewis stated that he had worked at Duro Bag from June 26, 1976 to March 1, 1985. Central States informed Lewis that he first became a participant in the pension plan in November 1977 and had earned 8.8 years of contributory service credit. Lewis did not respond.

The story picks up again in March 2001, when Local 100 asked Central States to review Lewis's service credit for 1976 and 1977 because Lewis believed he received an incorrect amount of credit for that period. In response, Central States reiterated that Duro Bag contributed to the pension plan from November 1977 to February 1985 and requested supporting information as to whether additional contributions were owed. Central States also noted that Lewis had 21.456 years of contributory service credit.

In December 2003, Lewis applied to Central States for a retirement pension benefit. After Central States informed Lewis that he was eligible for a 23-Year Contributory Pension, Local 100 submitted documents in support of Lewis's claim for additional service credit, including Social Security earnings records and a 2001 letter from the Duro Bag payroll manager stating that Lewis "was hired by Duro Bag Mfg. Co. on June 2, 1976, as a casual truck driver [and o]n May 25, 1977, he became a full time over-the-road truck driver." R.16-5 at 124. The Social Security documents showed that Lewis earned $2,050.70 at Duro Bag in 1976 and $10,788.72 in 1977.[2] A copy of Lewis's union-dues ledger indicated that he was initiated into Local 100 in November 1976.

Central States denied that any additional contributions were owed. Lewis appealed to the Central States Benefits Claim Appeals Committee and to the Trustee Appellate Review Committee. As part of his appeal, Lewis stated that he worked as a full-time city driver at Duro Bag from May 1976 to October 1976 and again from January 1977 to August 1977, at which point he transferred to a road-driver position. He explained that he was laid off in October 1976 due to a strike and was recalled in January 1977.

Both the Appeals Committee and the Trustees denied Lewis's claim for additional contributory service credit. Central States explained that Lewis had not established that Duro Bag should have made contributions for him prior to November 1977 and emphasized the lack of

---

[2]The breakdown by quarter was

|  | Jan.-Mar. | Apr.-June | July-Sept. | Oct.-Dec. |
|---|---|---|---|---|
| 1976 | -- | 782.02 | 1,268.68 | -- |
| 1977 | 764.50 | 1,106.90 | 4,008.61 | 4,908.71 |

contemporaneous documentation as to the date on which Lewis became eligible for service credit by completing his probationary period or which weeks he worked after that period. Further, Central States noted that the company records that Lewis had provided showed that he was initially hired as a casual employee, and that Duro Bag was not required to make contributions for casual employees.

Lewis and his union continued to correspond with Central States throughout 2005 and 2006. Along with seeking additional contributory service credit for his time at Duro Bag, Lewis asked Central States to review his contributions from Branch Motor Express, where he had worked during the fourth quarter of 1976 and the first quarter of 1977.

Central States again requested contemporaneous documentation of Lewis's probationary period at Duro Bag and sought clarification regarding several inconsistencies between Lewis's account of his employment history and other documents in the record. Specifically, Central States asked Lewis to explain why, if he was a regular employee at Duro Bag, he did not work during the fourth quarter of 1976 and only worked a few weeks from January through June 1977, as well as why Duro Bag was able to hire new drivers during the period when Lewis claimed to have been laid off.

In February 2007, the Trustees reconsidered and again rejected Lewis's claim for additional contributory service credit. In their determination letter, the Trustees explained their decision:

> The Trustees noted that you provided no contemporaneously prepared documents (seniority lists, paycheck stubs, driver log books, etc.) indicating (1) your seniority date, (2) the date on which you completed your probation period of 30 days worked within 90 calendar days (following the date on which you were hired for regular (not casual) employment), or (3) the specific weeks in which you worked after completing your probation period.

R.16-6 at 1. The letter also noted Lewis's failure to respond to the inconsistencies which Central States had identified between Lewis's position and other evidence in the record. Finally, Central States observed that it had first informed Lewis in 1986 that Duro Bag's contributions on his behalf began in November 1977, yet Lewis had waited fourteen years to alert Central States that he disagreed with this determination. Central States did, by contrast, credit Lewis with additional contributions from his time at Branch Motor Express. Even with these additional contributions, however, Lewis had only 24.456 years of service credit and was not eligible for a 25-year pension.

Lewis sued Central States, Duro Bag, and the International Brotherhood of Teamsters in August 2009, alleging that he became a regular employee (and thus eligible for contributory service credit) after completing a 30-day probationary period in July 1976. The district court held that Central States's decision to deny Lewis's claim for additional contributory service credit was not arbitrary or capricious because the CBA was ambiguous as to whether a casual employee could become a regular employee simply by completing a probationary period and because the administrative record supported a finding that Lewis was not a regular employee before November 1977. Accordingly, the district court granted Central States's motion for judgment on the administrative record, denied Lewis's motion to disregard the administrative record, and denied Duro Bag's motion to dismiss as moot,[3] as Duro Bag had no liability if Central States had none.

---

[3]Lewis's complaint also contained claims against Duro Bag for breach of contract and breach of fiduciary duty. The district court construed the former as a claim under the Labor Management Relations Act and dismissed it as time-barred, but did not specifically address the latter. Lewis does not address either claim on appeal.

Lewis timely appealed, arguing that Central States's denial of his claim was premised on a faulty reading of the CBA. Central States counters that its reading of the CBA is correct and that the record otherwise supports its decision to deny Lewis's claim. Alternatively, Central States contends that Lewis's suit is barred by the statute of limitations.[4]

## II. ANALYSIS

ERISA authorizes a participant in a pension plan to sue to "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). We review de novo a district court's decision regarding the denial of benefits under an ERISA plan. *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 258 (6th Cir. 2006). Unless the plaintiff makes a procedural challenge to the administrator's decision, a reviewing court will consider only the evidence contained in the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). When an ERISA plan "provides the administrator with 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,'" we will not overturn an administrator's decision to deny benefits unless that decision was arbitrary or capricious. *Smith*, 450 F.3d at 258-59 (quoting *Wilkins*, 150 F.3d at 613). An administrator's decision is not arbitrary or capricious "'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Bennett v. Kemper Nat'l Servs.,*

---

[4]Duro Bag filed a separate brief raising similar arguments. Lewis voluntarily dismissed his appeal against the International Brotherhood of Teamsters.

*Inc.*, 514 F.3d 547, 552 (6th Cir. 2008) (quoting *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006),

*aff'd*, 554 U.S. 104 (2008)).[5]

Here, the pension plan provides for administration by the Board of Trustees, which is "vested

with discretionary and final authority in making any determination" regarding benefit claims. R.16-3

at 85, 99 (Plan Document, § 7.01, app. B §6(c)). In addition, "all interpretations by the Board of

Trustees of [the Trust Agreement and the Pension Plan] shall be binding upon all parties to the Trust

Agreement, the Union, each Contributing Employer, [and] all individuals claiming benefits pursuant

to this Pension Plan." *Id.* at 85 (Plan Document, § 7.03). Accordingly, we will uphold Central

States's denial of Lewis's claim unless it was arbitrary or capricious.[6]

Lewis argues that he became a regular employee, and thus eligible for contributory service

credit, in July 1976. As support for his position, Lewis points to two provisions of the CBA:

Article 9 - Pension

---

[5]A decision can also be arbitrary or capricious if the decisionmakers harbor a conflict of interest, such as where the same entity both funds a benefits plan and evaluates the claims. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111-12 (2008). Such a conflict is "weighed as a factor" in determining whether there has been an abuse of discretion. *Id.* at 115 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (internal quotation marks omitted). Lewis does not allege that a conflict of interest existed in this case.

[6]Lewis contends that we should review Central States's decision de novo because it was based on an interpretation of the CBA and construction of contractual language is a question of law subject to de novo review. As explained below, construction of the CBA is not a dispositive issue in this case, because Central States could reasonably have denied Lewis's claim even if his reading of the CBA was correct. Therefore, we need not review (de novo or otherwise) Central States's or the district court's interpretation of the CBA.

> (a) . . . [T]he Company agrees to [contribute to Central States] for the purpose of providing pension benefits for each regular seniority employee covered by this agreement, excluding extra, casual, temporary and part-time employees.
> . . .
> Article 10 - Seniority
> (a) Newly hired drivers must work thirty (30) cumulative work days within any ninety (90) calendar day period before being considered a regular employee.

R.16-4 at 36, 37 (CBA, Art. 9(a), 10(a)).

Lewis does not appear to challenge the fact that Duro Bag initially hired him as a casual employee in June 1976, but argues that Article 10 is not expressly limited to newly hired *full-time* drivers and thus applies to all newly hired drivers, including newly hired *casual* drivers like Lewis. Based on this reading, he contends that he became a regular employee in July 1976 by working thirty-three days within a ninety-day period and thus should have begun earning contributory service credit at that point pursuant to Article 9.

Lewis argues that Central States's position that he could not attain regular-employee status until after he was hired as a full-time employee is contrary to the plain language of the CBA. Lewis's reading of the CBA does not render Central States's decision to deny him additional contributory service credit arbitrary or capricious, however. Even if Lewis could have completed a probationary period as a casual employee, no evidence in the administrative record definitively shows that he did so. Despite repeated requests, Lewis never provided contemporaneous documentation of when he completed his probationary period and which weeks he worked after that period for which he should have received contributory service credit. Lewis states that he worked thirty-three days between June and August 1976, but does not explain how he reached that number.

He suggests that he divided his gross earnings for the year by the CBA's hourly wage rate and an eight-hour day, but that calculation would not be conclusive as to how many days Lewis worked, because part of his earnings may have come from overtime or holiday pay or periods in which Lewis was paid by the mile rather than hourly.

Indeed, the record contains significant evidence that Lewis was not a regular employee until November 1977. Several of the documents that Lewis provided, including letters from Duro Bag's payroll manager and a photocopy of Lewis's pay log, state that Lewis was hired full-time in May 1977, suggesting that he remained a casual employee prior to that time. Moreover, Lewis's work history prior to May 1977 is consistent with casual-employee status. By his own account, he worked sporadically—from June to August 1976 and for seventeen days in the first quarter of 1977.[7] Lewis explains that he was laid off due to a strike during the fourth quarter of 1976, but other Duro Bag employees worked during this period. Duro Bag's member contribution reports show that less senior employees worked during that quarter, in violation of any seniority rights Lewis would have accrued if he had been a regular employee at that point.

Despite the CBA's union-shop provision, which requires employees to join the union within thirty-one days of their date of employment, Lewis did not join Local 100 until November 1976. As Central States noted, this was the time that Lewis began work at Branch Motor Express. Because

---

[7]Lewis's description of his employment history in his appellate brief is inconsistent with his description in various documents in the administrative record. In a 2004 letter to Central States, for example, he stated that he had worked as a city driver for Duro Bag from May 1976 to October 1976 and again from January 1977 to August 1977.

10

Local 100 also represented the employees at Branch, Lewis may have joined the union pursuant to his employment at Branch rather than at Duro Bag.

As with 1976, Lewis did not provide contemporaneous documentation as to his work history between May 25, 1977, when Lewis was hired full-time, and November 1977, when Duro Bag began contributing to the pension plan on his behalf. Internal Central States documents in the record reveal that Central States attempted to determine whether Lewis could have worked a sufficient number of weeks in this period to attain the additional service credit needed to reach 25 years. It apparently concluded that any such calculations were too speculative. Lewis does not specifically address this period in his appellate brief.

Central States's conclusion that Lewis was not a regular employee, and thus did not earn contributory service credit, prior to November 1977 was the result of a multi-year process that included two administrative appeals and was based on evidence in the administrative record. Accordingly, we cannot hold that the decision to deny additional contributory service credit was arbitrary or capricious.[8]

### III. CONCLUSION

Because Central States's decision to deny Lewis additional contributory service credit was not arbitrary or capricious, we AFFIRM the judgment of the district court.

---

[8]Because we hold that Lewis's claim lacks merit, we do not address Central States's and Duro Bag's argument that his claim was barred by the statute of limitations.